### BILL WATKINS v. THE STATE.

#### No. 5105.   Decided January 15, 1919.

**1.—Theft—Embezzlement—Statutes Construed.**

Where, upon trial of theft, the evidence did not show that the defendant had the care, management or control of the alleged stolen property, and the question was simply whether he took the same fraudulently, the offense was theft and not embezzlement.

**2.—Same—Charge of Court—Recent Possession—Explanation.**

Where, upon trial of theft, the evidence showed that the defendant, before the alleged stolen property was found, denied having it, and after it was found claimed that he bought the same, the court properly submitted a charge on defendant's explanation of possession of recently stolen property.

**3.—Same—Possession—Charge of Court—Temporary Absence.**

Where, upon trial of theft, the evidence showed that the alleged owner of the stolen property was away from home for the day during which the property was taken, his temporary absence did not change his ownership and control of said property.

**4.—Same—Bills of Exception—Practice in District Court.**

Where defendant complained that his bills of exception had been explained away by the trial court, but no reason was shown why he could not have had an extension of time, if the statement of facts and bills of exception as approved by the court were not satisfactory to him, etc., there was no reversible error.

**5.—Same—Argument of Counsel—Requested Charge.**

Where defendant complained of the argument of State's counsel and the court gave written instructions not to consider part of them, and refused to give a charge to disregard other parts thereof because they were in response to the argument of defendant's counsel, there was no reversible error.

Appeal from the County Court of Fannin.   Tried below before the Hon. S. F. Leslie.

Appeal from a conviction of misdemeanor theft; penalty, thirty days confinement in the county jail.

The opinion states the case.

*R. T. Lipscomb,* for appellant.—On question of qualifying bills of exception: Leonard v. State, 53 Texas Crim. Rep., 187; Graham v. State, 72 Texas Crim. Rep., 9, 160 S. W. Rep., 714; Johnson v. State, 61 Texas Crim. Rep., 635, 136 S. W. Rep., 259; Slatter v. State, 61 Texas Crim. Rep., 243, 136 S. W. Rep., 770; Blain v. State, 34 Texas Crim. Rep., 448.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of petty theft and his punishment assessed at thirty days in jail.

The stolen property was about 200 pounds of seed cotton of the value of about $19, the property of Buck Wallace.

The facts show that about October 20, 1917, said Wallace had appellant and several other negroes picking cotton for him. Before they concluded their week's work he went to the Dallas fair, and left money with his wife to pay the negroes for picking the cotton, which she did. Said Wallace also arranged with one Dunlap to haul the negroes from his place where they were picking back to town at the end of the week, which he did. Mrs. Wallace, the wife of Buck Wallace, noticed the bundles appellant and the other negroes had put in the wagon to be hauled off, and thought they put in more bundles of bedding than they had, and became suspicious that they were taking some cotton. She told her father, and he advised her to go and get the sheriff and find out about the matter. She got in a car, went to town, got the sheriff, went back and met the appellant and the other negroes about a mile east of town. She and the sheriff both swore that when they asked appellant if he had any cotton in the wagon he, appellant, expressly denied that he had any cotton in the wagon. The sheriff then told them to get out, which they did, and he searched the wagon and found two sacks of seed cotton in the bottom of the wagon covered up with their bed clothes and cooking outfit. Appellant introduced his brother, Son Watkins, who testified that he was present at the time appellant took this cotton, but he said that appellant claimed that he was taking it to raise sufficient funds for himself to go to Dallas, and when he came back he said he intended to pay Mr. Wallace for the cotton, and claimed that the reason he wrapped it up in the bedding and put it in the bottom of the wagon was that he did not want his wife to know that he was going to Dallas. After the sheriff had made him and the other negroes get out of the wagon, and he searched the wagon and found the cotton therein, appellant told the sheriff that he did not intend to steal the cotton, but thought it would be all right with Mr. Wallace for him to take and sell it, and afterwards pay Mr. Wallace for it. Mr. Dunlap, who hauled appellant and the other negroes into town, said that when he went out to get them he did not see and did not know that there was any cotton being hauled away; that it turned out the cotton was rolled up in the bedding and put in the wagon in such way he did not

know and could not tell that it was there until after the wagon was searched by the sheriff. Mr. Wallace, the owner of the cotton, swore that he did not give appellant his consent to take the cotton, and that it was taken without his knowledge and consent.

The evidence was amply sufficient to show that appellant stole the cotton with the intent to deprive the owner of the value thereof, and to appropriate it to his own use and benefit. The court did not err in refusing his peremptory charge to acquit.

Appellant requested several special charges. The court in his charge gave those requested by appellant, which should have been given substantially as he requested them.

Appellant's defense was that although he took the cotton—stole it— that when he took it he had no fraudulent intention, but took it with a view and intention of paying for it, and that he thought his taking it would be satisfactory to the owner. This was all fully submitted by the judge's charge to the jury, and before they could convict they were instructed that they must believe from the evidence beyond a reasonable doubt that he fraudulently took the cotton from the owner without the consent of the owner, and with the intent to deprive the owner of the value of it, and appropriate it to his own use and benefit.

He submitted appellant's claimed defense as follows: 5. If you believe from the evidence that the defendant when he took the cotton had no fraudulent intention, but took the same with the view and intention of paying for same, or if you have a reasonable doubt as to whether or not he did so take the same, then you will find the defendant not guilty.

6. If you should believe from the evidence that defendant took the cotton without the knowledge and without the consent of Buck Wallace, and you further believe from the evidence that at the time of taking the cotton the defendant intended to pay for same, and believed that it would be satisfactory to Buck Wallace, or if you have a reasonable doubt as to whether or not the defendant believed it would be satisfactory with Buck Wallace, or whether he intended to pay Buck Wallace for the cotton, you will acquit him.

These charges submitted appellant's defense completely, and were all that should have been given on the subject.

However, appellant requested a charge on recent possession and explanation of stolen property, and evidently the court in deference to his request submitted that question to the jury. This question really should not have been submitted at all, but as appellant requested it he can not complain at the court submitting it. The evidence did not really raise that question. On this subject Mr. Branch in his 2 Ann. P. C., sec. 2469, lays down the undoubted principle applicable to this question as follows: "Possession of property recently stolen being a circumstance only, no inference of guilt is deduced therefrom as a matter of law; therefore it is no more necessary to single out and charge on the circumstance of such possession than it would be to single out and charge

on the circumstance of flight or motive. Nor does the fact that an explanation of such possession is in evidence require a charge on the subject of possession and explanation. An explanation is of no consequence to either side unless it involves some defense; hence an affirmative charge on the defense involved in the explanation is all that is required and is the safest and fairest way of submitting the issue to the jury." He cites some twenty-three cases of this court in point supporting the principle announced by him.

So that in no event did the court err in charging as he did, and in refusing appellant's special charges.

Appellant has two bills of exception to the claimed argument of the county attorney. In one, No. 6, he complains that the county attorney said: "He is no account, trifling negro," and asked the jury if they would like to credit him for $20. He excepted to that argument of the county attorney. The court sustained his exception, and gave his written charge at the time telling the jury not to consider for any purpose whatever the said argument of the county attorney. The court in approving this bill qualified it by stating that he charged the jury in writing not to consider said remarks of the county attorney on appellant's request. He further said: "However, I do not think the attorney used the above language and in my judgment the language he did use could have been properly used in answer to the argument of defendant's attorney."

In another bill, No. 7, he complained of this language of the county attorney: "You gentlemen well know that last fall cotton was good and any negro could have had money sufficient to go to the Dallas fair," to which language appellant objected. The court sustained his objection, and at the time verbally charged the jury not to consider the said argument. In the qualification of his bill the judge stated that the appellant's attorney in his argument talked of the reasonableness of defendant's action, and the judge further said in his qualification: "In my judgment the above argument was justified in replying to defendant's attorney"; that he charged the jury orally not to consider said remarks by the county attorney, and would have charged them so in writing but the appellant did not request a written charge on that subject until after the jury had retired.

Appellant has another bill to the action of the court in qualification of his bill No. 6, above stated. He shows that he prepared his bills, submitted them to the county attorney, and turned them over to the judge just a few days after the trial was concluded; that the judge kept them until the evening of the last day, the twentieth after adjournment, and then made the qualification above noted to his bill No. 6, and filed it with the clerk. He excepted in another bill to this action of the court, in substance, stating that it was without his knowledge and consent, but in that bill he nowhere contends or claims that the qualification placed on his bill No. 6 by the judge was not in fact true, and by not objecting on that account he impliedly admitted that the judge's

qualification, as a matter of fact, was true.   Disregarding the judge's qualification of this bill, it shows no error.

None of these bills present any reversible error.   They are somewhat of an unimportant nature.   However, appellant's claimed defense, and doubtless as the court stated in his qualification of his bill No. 7, his attorney's argument would naturally suggest such a reply thereto as the county attorney made, and in no event would either of these matters justify this court to reverse this case.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### January 15, 1919.

LATTIMORE, JUDGE.—This case was affirmed at a former date of this term in an opinion by Prendergast, Judge.

Appellant presents a vigorous motion for rehearing which has received our careful consideration.

The case is one of misdemeanor theft, the property taken being certain seed cotton, in quantity about 200 pounds; it was undisputed that the cotton was taken without the knowledge and consent of the owner, from his premises during his temporary absence.   Appellant was picking cotton, along with a number of other hands, and was paid by the owner one dollar for his services in weighing the cotton of the other hands and in paying them, on the day of the owner's absence.   On the afternoon of the alleged theft appellant was going away from the owner's premises in a wagon in which was the alleged stolen cotton.   When asked if he had any such cotton he denied it, according to two witnesses, the wife of the owner of the cotton and another person.

His principal defense on the trial was that even though he took the cotton, he intended to pay for it and thought it would be all right with the owner.

Appellant makes several contentions in his motion for rehearing, which we will briefly notice.   First, that his defense was misunderstood by this court on the former hearing; he claimed that if guilty of any offense it was embezzlement and not theft.   We do not agree with him in this contention under the record, for no witness testified that appellant had the care, management or control of the cotton when taken. The owner was absent only for the day and appellant was acting for him merely in weighing the cotton and in paying the hands.   If he took the cotton fraudulently it was theft and not embezzlement.   Second, appellant contends, as set out in his bill of exceptions No. 5, the trial court gave an erroneous charge on appellant's explanation of his possession of recently stolen property, and that this court erred in holding that such charge was given at request of appellant.   It seems to us that a mistake was made in the former opinion in stating that the charge was given at the request of appellant, and same is modified to that extent, but the giving of the charge by the trial court was not

error. It appears from the record that before the alleged stolen property was found in the wagon being driven away from the premises of the owner, that appellant was asked about the cotton and denied having it, and when it was found in said wagon·rolled up in some bed clothes;—it appears from his bill of exceptions No. 5, and the sixth ground of his motion for new trial;—that he then said that he bought the ʻcotton from a negro, but later stated that he took it from the owner's premises thinking it would be all right with Mr. Wallace and intended to pay him for it. These facts justified the charge on explanation of possession of recently stolen property. Third, appellant contends in his motion that the trial court should have given his special charge No. 1 directing a verdict for him upon the main ground that the property was not taken from the possession of Buck Wallace, the owner. We can not agree with appellant in this contention. Wallace was away from home for the day at the Dallas fair and says positively that he did not leave his cotton in charge of appellant. The temporary absence of the owner does not change the ownership and control in theft prosecutions. Fourth, appellant strongly complains that his bills of exception have been "explained away," that they and the statement of facts were not filed till the last day permissible and that thereby he has been injured. The trial was had on April 2nd and the court adjourned on April 27th, and on May 17th the statement of facts and bill of exceptions were filed. No reason is shown why appellant could not have had the time extended if the statement of facts and bills as approved by the court were not satisfactory to him, and no reason is shown why the same matters were not pressed upon the court for action sooner. Of course, every man tried in the courts is entitled to have his case come before the upper court upon the exact record as made upon the trial, and it is unthinkable that a judge or other person would wilfully attempt to take away this unquestioned right of every defendant. And the matter is so serious that charges of conduct of this kind ought to be made only in plain cases.

All errors complained of in the bill of exceptions so "explained" by the court were as to statements made by the county attorney in his argument to the jury. The court gave the written instructions asked by appellant, telling the jury not to consider one of said statements. The court refused to give the requested charge for the jury to disregard the other statement, and when the bill of exceptions was presented which was taken to his action he qualifies same by saying, in substance, that the county attorney's statement was in response to the argument of appellant's attorney along the same line. In this we can see no error  We are inclined to think the able counsel for appellant, actuated by commendable zeal for his client's welfare, overestimates the effect upon the jury of the statements of the county attorney complained of.

The real merit of appellant's defense lay in his claim that he took the cotton without fraudulent intent, and expecting to pay for it, and

believing it would be all right with the owner. This defense was fully presented to the jury in two separate ways by the trial judge and the jury found against appellant thereon.

Believing there was no material error in the original opinion, the motion is overruled.

*Overruled.*